PORTER v. PORTER et al. (No. 7532.)

(Court of Civil Appeals of Texas. San Antonio. March 24, 1926.)

1. Venue ⊂⇒22(3)—Where suit was brought in county of residence of one, made defendant for that purpose alone, overruling plea of privilege of other defendant held error (Rev. St. 1925, arts. 1995, 2007).

Where one with interests identical with plaintiff's was joined as defendant merely that suit might be brought in county of his residence under Rev. St. 1925, art. 1995, overruling plea of privilege of other defendant, under article 2007, *held* erroneous.

2. Pleading ⊂⇒111 — Evidence held to show nominal defendant was made such for purpose of placing venue in county of his residence.

In suit for partition of property of decedent and accounting by one defendant, evidence on such defendant's plea of privilege *held* to show that other defendant's interests were identical with plaintiffs', and that he was made defendant for purpose of placing venue in county of his residence.

3. Venue ⊂⇒22(1)—Suit for accounting and to recover undivided interest in land must be brought in county where land is situated, notwithstanding allegations and prayer for partition (Rev. St. 1925, art. 1995, subds. 13, 14).

Suit primarily for an accounting and to recover undivided interest in certain land must be brought in county where land is situated under Rev. St. 1925, art. 1995, subd. 14, irrespective of incidental allegations and prayer for partition sought to render suit maintainable in county of residence of one of defendants under subdivision 13.

Appeal from District Court, San Patricio County; T. M. Cox, Judge.

Action by C. M. Porter and others against Vernon Porter and another. From an order overruling the plea of privilege of defendant named, he appeals. Reversed and rendered.

H. S. Bonham, of Beeville, and Perkins & Floyd, of Alice, for appellant.

Dougherty & Dougherty and Beasley & Beasley, all of Beeville, for appellees.

SMITH, J. This appeal is from an interlocutory order overruling a plea of privilege.

The suit was brought by C. M. Porter and others against W. A. Porter and Vernon Porter. All the parties, except three spouses joined pro forma as such, are children or grandchildren of L. T. Porter and wife, deceased. The obvious purpose of all the plaintiffs, as well as of the defendant W. A. Porter, is to require the remaining defendant, Vernon Porter, to account for and disgorge certain real and personal property in which the plaintiffs and defendant W. A. Porter claim an equal proportionate interest with Vernon Porter, alleged to have possession of all the property and the legal title to most of the real estate involved. Defendant W. A. Porter resides in San Patricio county, and defendant Vernon Porter in Jim Wells county, where all the property involved is situated. The other parties reside in various other counties. The suit, however, was brought in San Patricio county, of which plaintiff C. M. Porter and defendant W. A. Porter are residents.

The defendant Vernon Porter filed a plea of privilege to be sued in Jim Wells county, where he resides, and where all the property involved is situated. The plea embraced all the elements required by the provisions of article 2007, R. S. 1925, and an additional allegation that W. A. Porter was fraudulently made a party defendant by plaintiffs for the purpose of conferring jurisdiction upon the district court of San Patricio county, and that the action, although brought in the form of a partition suit, was in fact an action for an accounting. To this plea the plaintiffs filed a controverting affidavit, contending that the suit was one for partition, that the demand for an accounting was but an incident to the main clause for partition, and that as W. A. Porter, one of the defendants, was a resident of San Patricio county, the action was maintainable there by virtue of the provisions of subdivision 13, art. 1830, R. S. 1911 (article 1995, R. S. 1925), as follows:

"Art. 1995. No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile except in the following cases: * * *

"(13) *Partition.*—Suits for the partition of land or other property may be brought in the county where such land or other property, or a part thereof, may be, or in the county in which one or more of the defendants reside, or in the county of the residence of any defendant who may assert an adverse claim to or interest in such property, or seeks to recover the title to

the same. Nothing herein shall be construed to fix venue of a suit to recover the title to land."

A hearing was had upon the plea of privilege which was overruled, and Vernon Porter appealed.

It was alleged in the petition of the plaintiffs below that in 1907 or 1908, L. T. Porter and wife moved to Sandia, in Jim Wells county, and lived there with their son, Vernon, until they died, intestate, in 1922 and 1917, respectively; that they owned several lots in the town of Sandia, on which they had their home as well as a business establishment; that the father was 72 years old when he went to live with Vernon, was so infirm that he could not attend to his own business affairs, and that his infirmities gradually progressed until his death; that from 1907 the father and Vernon were engaged as partners in the general merchandise business at Sandia, and that Vernon "actively attended to business affairs of the concern and to the exclusion of the plaintiffs and also the defendant W. A. Porter, and had control and management of the business of the affairs of his father and the property of his parent's estate." It was further alleged:

"That during the time that said partnership business, which was owned one-half by L. T. Porter and one-half by Vernon Porter, was being conducted, various persons became indebted to the firm; with a great many of these settlements were had by the conveying or assigning to the firm, real or personal property; such property was taken in the name of Vernon Porter, although in truth and in fact it belonged to the partnership and was traded in by Vernon Porter and the proceeds thereof ultimately invested by him in the 500 acres of land hereinafter described in the improvement thereof and in the purchase of personal property. Those debtors of the firm with whom settlements were not had were obligated to the firm on open account. As to the number of such accounts and the respective amounts thereof, and as to what portion of them have been collected, these plaintiffs are unable to state, because all the books and papers relative to the partnership affairs and in respect to the properties of the estates of Mr. and Mrs. Porter are in the hands of the defendant Vernon Porter, and the facts in relation thereto are exclusively in his knowledge, and no statement thereof has ever been made.

"That upon the termination of the partnership affairs the business was sold, plaintiffs say upon information and belief, for a cash consideration of the sum of $6,000, and in regard to which the defendant Vernon Porter has rendered no accounting.

"That after the partnership was terminated and before that time, the defendant Vernon Porter has collected rents from the above-mentioned business property and no accounting thereof, and such rentals, the amounts for the reason stated and because the defendant Vernon Porter has assumed the management and control thereof since the death of L. T. Porter, these plaintiffs are unable to state, which said rentals after the death of L. T. Porter became the property of his estate, and which plaintiffs and defendants are entitled to share in pro-

282 S.W.—52

portion as stated, and of which the defendant Vernon Porter should be held accountable.

"That the defendant Vernon Porter is chargeable with advancements to him by the said L. T. Porter and E. F. Porter; one advancement consisted of a block of ground in the town of Sandia, being all of block No. 19, with the improvements thereon, all of the probable value of $1,500. These plaintiffs say that the gift of this property was in the nature of an advancement, and the defendant Vernon Porter should be held accountable therefor, or its value in the partition of the property of the estates.

"That the household and personal effects of L. T. Porter and E. F. Porter, now also in the hands of the defendant Vernon Porter, are property belonging to their estate, belonging jointly to plaintiffs and defendants, and subject to partition in this suit."

It was further alleged that by reason of the facts stated, the estates of the deceased parents "own an interest" in four specifically described tracts of land, aggregating 500 acres, the legal title to which was alleged to be in Vernon Porter, "in proportion to the funds of said estates that went into the purchase and the improvements thereof," subject to certain indebtedness existing against it, and "such interest is owned by the plaintiffs and defendants in the proportion" therein specifically set out. In the alternative, the plaintiffs alleged "that the funds of the estates of L. T. and E. F. Porter that went into the purchase of the above-described property, as well as all other funds of said estate that the defendant Vernon Porter has received, constitute a debt or obligation on the part of the defendant Vernon Porter in favor of said estate and assets of said estate, belonging to these plaintiffs; the defendants and they have their respective interests therein, as above set out, and same is subject to partition and should be partitioned herein."

The petition ended with the following prayer:

"Wherefore plaintiffs pray that the defendant be cited to appear and answer this petition, and an order be entered by this court directing the defendant to prepare a statement and account showing the property and the funds of the estate of L. T. Porter and E. F. Porter, deceased, that have come into his hands and the disbursements made in regard thereto and the disposition made thereof showing an account and a statement of the property and affairs of the partnership properties of the said L. T. Porter and said defendant, and giving an account of the rents and other revenues derived from the estate properties, and further directing that said statement and account be filed at the present term of this court; that a settlement and equitable accounting of all the estate properties be had and determined among and between the parties, plaintiff and defendant, in this suit; that the interests of the estates in the 500 acres of land in the name of the defendant Vernon Porter be determined and fixed, or, in the alternative, that the amount of the estate funds going into the purchase and the improvements thereof be fixed and determined, and that plaintiffs have judgment for respective interests therein, and that any advancements

made to any of the parties hereto be charged against them in the settlement and division of the properties of the estates, that judgment be entered for partitioning and dividing all of the properties of said estates, that if it be found that said estate property is susceptible of partitioning, commissioners be appointed to partition and divide the same and thereto a writ of partition issue and for possession by the plaintiff of their respective portions of said property, but that if the property or any part of it cannot be divided as it stands, same be ordered sold in accordance with the statutes and in such manner as the court may direct, and that a receiver be appointed to make such sale and turn the proceeds into court to be partitioned among the parties at interest, for their costs and such other relief as they may be justly entitled to."

It appears from the record that prior to the institution of this suit, C. M. Porter, the apparently dominant plaintiff in this suit, joined by W. A. Porter, apparently a dormant defendant in this suit, instituted and prosecuted a proceeding in the probate and district courts of Jim Wells county to procure administration of their parents' estate; but this effort was defeated by their brother Vernon. Afterwards, C. M. Porter, acting for himself as well as for W. A. Porter, codefendant in this suit, demanded an accounting of Vernon, who refused to respond, and this suit followed.

[1, 2] Upon the hearing of the plea of privilege, it was shown that W. A. Porter, who was joined as a codefendant with Vernon Porter, and whose joinder as such is alleged to have been fraudulently made in order to place venue in San Patricio county, where he resides, is represented in this suit by the plaintiff's attorneys, and was represented by them as against Vernon in the Jim Wells county litigation, in which administration was defeated by Vernon. In other words, all the plaintiffs and the defendant W. A. Porter have been represented by the same attorneys throughout the controversy and are represented by them in this suit. The interest of all the plaintiffs, and of defendant W. A. Porter, are the same in this suit, and the interest of all of them are distinctly and wholly antagonistic to the other defendant, Vernon Porter. Defendant W. A. Porter testified that—

"I am a brother to Vernon Porter. Mr. Beasley is representing me in this case. He also represents my brother C. M. Porter. I don't know just exactly how long Mr. Beasley has been representing me, but Mr. J. R. Dougherty represented me when I first came into the case. I don't know whether Mr. Dougherty is representing me now or not, but Mr. Beasley is.

"I was a party to the application filed in Jim Wells county for an administration on my father's estate. Mr. Forrey, of Alice, represented me in that proceeding when the suit was first filed, and Mr. Dougherty represented me in the district court, and was still representing me when this suit was filed. Mr. Dougherty was also representing my brother C. M. Porter in the district court of Jim Wells county. My brother and I were acting together down there in that matter—we had the same lawyer—and we are also working together in this matter and have the same lawyer.

"My brother and I are both seeking to recover from Vernon Porter in this suit what we are entitled to. I came into this suit for the purpose of getting what was coming to me. We are also seeking an accounting from Vernon Porter in this suit. I don't know that I am seeking to recover from Vernon Porter only in this suit. I am seeking also to recover from any of the rest of them that owe me anything. I am not seeking in this suit to recover anything from my brother C. M. Porter, and he is not seeking to recover anything from me.

"I have never filed any pleading in this case other than this petition here. Mr. Beasley is the only lawyer representing me at the present time. I don't remember just when I first employed Mr. Beasley in this case; I couldn't say. Nor do I remember just when I employed Mr. Dougherty; I don't remember the day and month and year; I imagine that it was some time last year, but it may have been as far back as 1923. I employed Mr. Dougherty before the proceeding was filed in the district Court of Jim Wells county, and when that matter was ended I continued his employment for the purpose of filing this suit. It was after that time that I employed Mr. Beasley. I couldn't say who I had to make arrangements for me with Mr. Beasley unless Mr. Dougherty made them and got him to take the case.

"I have discussed this case some with Mr. Dougherty, but not very much. That was before this suit was filed. I also discussed this case a little bit with Mr. Beasley some time this summer, I think. At the time I was discussing the matter with Mr. Beasley, I knew that Mr. Dougherty had dropped out, and that Mr. Beasley was acting for me and had charge of it; that is, he was attending to the matter. He is now representing me in this suit. * * *

"All that I want in this suit is my share of the property of the estate. I have no particular grievance against Vernon Porter any more than I have against the rest of the children. All I want is my share of the property of the estate; and the only reason why I made application to get my share of the property is because Vernon Porter has taken charge of all the property, refused to let me have any of it, and has charge and control of all the property of the estate. * * *

"If Mr. Dougherty is still in the suit, I suppose he is representing me. I stated a moment ago that I wanted from Vernon what was coming to me. I don't know that I have ever asked him for it, but my brother C. M. Porter talked with him about it, and I talked with C. M. about it.

"When my brother C. M. Porter was talking with Vernon Porter, he was trying to get from him a division of the property and get what belonged to him and me, too. I think I had talked with my brother C. M. Porter before he talked with Vernon Porter. I didn't want to talk with Vernon Porter direct because he had threatened to kill me. It's my purpose in this suit to recover from Vernon Porter whatever belongs to me that he has."

It is quite obvious from this testimony, which is undisputed, that W. A. Porter was joined as a party defendant for the sole purpose of placing the venue of the case in the county of his residence, which is also the county of the principal plaintiff's residence. The very allegations in the petition, as well as the prayer for relief, place all the plaintiffs and defendant W. A. Porter upon one side of the bitter controversy, and Vernon Porter alone upon the other. Every allegation in the petition is directed solely against Vernon Porter; none are directed at his codefendant W. A. Porter, and all are made in behalf of the latter and the plaintiffs, alike. They raise an impelling suspicion, if not a controlling presumption, that W. A. Porter was taken from the ranks of the plaintiffs and allocated to the position of defendant for the sole purpose of fixing venue, and only an allegation of his refusal to join the plaintiffs in their demand could allay the suspicion, or, perhaps, overcome the presumption. If any doubt of the purpose was left in the pleading, the testimony of W. A. Porter, himself, completely removed it. Instead of disclosing any objection to joining the ranks of the plaintiffs, or of showing any interest in common with his codefendant, or not in common with the plaintiffs, he showed the precise contrary. Throughout the controversy, beginning back in Jim Wells county, and extending into this suit and through the matter of privilege, he had acted with and through the principal plaintiff, who pressed their common interest, employed counsel for both, presented their common claim to defendant Vernon, whom his codefendant W. A. Porter did not want to talk to "direct because he had threatened to kill me."

[3] The court should have sustained the plea of privilege upon another ground. Appellees sought to fix the venue in San Patricio county under the exception embraced in subdivision 13, art. 1995, in which it is provided that suits for partition "may" be brought in the county where the property to be partitioned is situated, or in which one or more of defendants reside, unless the suit is one to recover lands. If the suit is of the latter class, then, under the provisions of subdivision 14, it "must" be brought in the county in which the land is situated.

It is obvious from the plaintiffs' petition and prayer that the suit is primarily and principally for an accounting and to recover an undivided interest in four tracts embracing 500 acres of land, as well as other property, the legal title to which is shown in the petition to be in appellant. The allegations and prayer for partition are but incidental to the principal matter of recovery of an unascertained interest in the real and personal property. It has been held, and very properly so, that in such case the exception contained in subdivision 13 of article 1995, relating to partition, is subordinate to the succeeding subdivision 14, fixing venue in suits for the recovery of lands, and the latter exception will control. Stark v. Burr, 56 Tex. 130.

The judgment is reversed, and judgment is here rendered that the clerk of the district court of San Patricio county immediately make out a correct transcript of all the orders made in this cause, certifying thereto officially under the seal of said court, and send the same with the original papers in the cause, to the clerk of the district court of Jim Wells county, as provided by article 2174, R. S. 1925.

Reversed and rendered.